UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
RICHARD CHAUCA, Jr., et al.,                  MEMORANDUM
                                                                          & ORDER

                 Plaintiffs,

                                                            02CV4775(SLT)(RML)

           -against-

GOODYEAR TIRE & RUBBER CO., et al.,

                 Defendants.
-------------------------------------------------X
TOWNES, U.S.D.J.

      Plaintiffs' motion to amend the complaint and remand this action to state court is denied. This memorandum addresses Plaintiffs' claims.

I.       *Facts and Procedural History*

      On August 15, 1999, plaintiffs Richard Chauca, Jr., Kathleen Chauca, Daniel Chauca, Christina Chauca, Michael Chauca[1] and Joseph Miclat ("Plaintiffs"), all New York residents, were injured in a car accident in the State of Georgia. (Pls. Mem. of Law at 1.) At the time, Plaintiffs were passengers in a car driven by Richard Chauca, Sr., a New York resident. ("Chauca Senior"). (Pls. Mem. of Law at 2.) The other car involved in the accident was driven by Ronald Garret, a New York resident (the "Proposed Defendant Garret" or "Garret"). The police report described the accident as follows:

> [The Chauca vehicle] was travelling southbound on I-95 in the left lane. [The Garret vehicle] was travelling southbound on I-95 in the right lane. According to physical

---

[1] Kathleen Chauca has filed suit on behalf of herself, as well as her children, Plaintiffs Richard Chauca, Jr., Michael Chauca, and Daniel Chauca, all infants under the age of 18. Hugo Chauca has filed on behalf of his daughter Christina Chauca, an infant under the age of 14.

> evidence and driver statements [the Chauca vehicle's] left tire separated causing [it] to lose control, skidding 102 feet and veering into the path of [the Garret vehicle]. This caused [the Garret vehicle] to skid 128 feet before striking [the Chauca vehicle] in the right rear side with its left front. After impact [the Chauca vehicle] rotated clockwise and travelled into the west ditch 103 feet before overturning on its top[,] coming to rest 38 feet from the west edge of I-95 south. After impact [the Garret vehicle] travelled into the west ditch 90 feet before coming to rest on its left side 32 feet from the west edge of I-95 south. Area of impact between [the vehicles] was 3 feet from the west edge of I-95 south in the emergency lane. Measurements were made by fiberglass tape.

(Pls. Mem. of Law Ex. C at 2.) On December 24, 1999, Engineering & Forensic Services ("EFS") issued a report to Allstate Insurance Company ("Allstate"), the insurer of Chauca Senior, wherein it concluded that the "left rear tire failed before vehicle rollover" and that "there is no physical evidence of contact of sufficient intensity by another vehicle to cause loss of vehicle control by the driver." (Defs. Mem. of Law Ex. C at 3.)

On or about June 26, 2000, Plaintiffs filed a complaint in the Supreme Court of New York against Chauca Senior and Garret (the "Proposed Defendants") for the injuries sustained during the August 1999 accident in Georgia. (Pls. Mem. of Law Ex. A.) The complaint stated, *inter alia*, "[t]hat the aforesaid occurrence was caused wholly and solely by reason of the negligence of [Proposed Defendants]." (Pls. Mem. of Law Ex. A at ¶¶ 19, 30, 41, 52, 63, 74.) In his answer to the complaint, Chauca Senior stated, as an affirmative defense, that "[t]he proximate and sole factor causing this accident was the product failure of a tire not within the knowledge or control of [Chauca Senior]." At this time, Plaintiffs were represented by the Law Offices of Emilia Rutigliano of Richmond Hills, Queens. (Pls. Mem. of Law at 2.)

On or about July 8, 2000, Chauca Senior instituted an action against Garret in the Supreme Court of New York. (Pls. Mem. of Law at 2.)

More than two years after filing the initial complaint against Chauca Senior and Garret, Plaintiffs filed a complaint against Defendants Goodyear Tire, Inc., Kelly-Springfield Tire Company, Inc. and Vanderbilt Tire Company, Inc. ("Defendants") in the Supreme Court of New York on or about July 8, 2002. (Pls. Mem. of Law Ex. D.)

Plaintiffs cite several reasons for the delay in bringing the action against Defendants. According to Plaintiffs, their original attorney was unskilled in product liability law and therefore enlisted the help of the law firm of Paul Hayt. (Pls. Mem. of Law at 3.) That office obtained an expert who, plaintiffs allege, "opined" that the tire separation was the cause of the tire failure, rather than the collision with Garret. (Pls. Mem. of Law at 3.) Additionally, Plaintiffs claim that the expert's evaluation "took a great deal of time, as the first indication of the tire possibly being responsible for the accident came from the insurance adjustors for Chauca Senior." (*Id.*) Presumably, Plaintiffs are referring to one of two documents: a report by EFS, discussed *supra*, and issued on December 24, 1999, approximately two and a half years before filing the action against Defendants in state court, (Defs. Mem. of Law Ex. C at 3), or a letter sent to Plaintiffs' original attorney, dated May 24, 2000, from Allstate similarly alleging tire failure. (*See* Letter from Paul Hayt to Magistrate Judge Levy, dated May 20, 2003, Ex. B.) Plaintiffs also claim that, because the statute of limitations on the product liability claim had almost run, "motions to add a party [to Plaintiffs' state action] would have taken too long." (Pls. Mem. of Law at 3.) Therefore, according to Plaintiffs, a separate suit against Defendants became necessary at that time.

These three separate actions "have been working their way through the various courts" ever since. (Pls. Mem. of Law at 3.) Defendants alleges that both related state actions are trial ready. (Defs. Mem. of Law at 4.)

On or about August 29, 2002, Defendants petitioned this Court for removal under 28 U.S.C. § 1441 *et seq.* based on diversity of citizenship between the parties.[2] (Defs. Notice of Removal at 2.) Plaintiffs "concededly did not fight the removal action." (Pls. Mem. of Law at 3.) Instead, Plaintiffs claim to have relied on attorneys for Allstate who were defending Chauca Senior and who allegedly planned to "third party" the tire manufacturer and distributor into the state case against Chauca Senior. Plaintiffs claim Allstate's decision not to pursue a third-party counterclaim, coupled with their second change of attorney delayed the filing of their motion to join the non-diverse Chauca Senior and Garret until December 10, 2003.[3] [4]

II.     *Discussion*

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. § 1447(e). In interpreting § 1447(e), "courts first consider whether joinder would be appropriate under Rule 20 [of the Federal Rules of Civil Procedure] and then proceed to weigh the competing interests in efficient adjudication and the need to

---

[2] "Defendant Goodyear is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Akron, Ohio. Kelly-Springfield Tire Company, Inc. merged with Goodyear in 1996 and Vanderbilt Tire Company, Inc. is not a separate entity but a brand name for a tire known as 'Vanderbilt.'" (Defs. Not. of Removal at 2.)

[3] Additionally, there is some confusion as to when Plaintiffs filed their motion. Plaintiffs' memorandum is undated and while the Court's docket reflects that it was filed on January 26, 2004, Defendants claim to have received it on or about December 10, 2003. (Defs. Mem. of Law at 9.) Any calculations in this opinion involving Plaintiffs' undated memorandum begin from December 10, 2003.

[4] On or about December 31, 2004 an "Affirmation in Support" was filed by John R. Feretti, attorney for Proposed Defendant Garret. Because neither Mr. Feretti nor Proposed Defendant Garret have made appearances before this Court, this affirmation cannot be considered.

protect diversity jurisdiction from manipulation." *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 922 (S.D.N.Y. 1995); *see also Gursky v. The Northwestern Mutual Life Ins. Co.*, 139 F.R.D. 279, 281-282 (E.D.N.Y. 1991) (Wexler, J.) ("additional non-diverse parties need not be indispensable to be joined...[Joinder need only be] permissible under Rule 20...and the balancing of certain relevant considerations [must] weigh in favor of joinder and its necessary attendant remand.").

    A.    *Rule 20 Analysis*

Rule 20 provides, in relevant part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons...may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their separate liabilities.

Fed. R. Civ. P. 20(a). In short, "joinder is permitted only if (1) a right to relief is asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of occurrences; and (2) a common question of law or fact arises." *Rodriguez v. Abbott Labs.*, 151 F.R.D. 529, 532 (S.D.N.Y. 1993) (citation omitted).

Plaintiffs meet the Rule 20 criteria for joinder, as the claims asserted against Defendants and the Proposed Defendants arise out of the August 15, 1999 car accident, satisfying the first prong of the test for permissive joinder. "The fact that the theories of liability are different in the two actions does not weigh against joinder." *Mammano v. Honda Motor Co. Inc.*, 941 F. Supp.

323, 325 (W.D.N.Y. 1996) (remanding action against vehicle manufacturers after joining two individual defendants who were involved in the same accident where, *inter alia*, New York law applied to all of plaintiff's claims); *see also* *Jedraszak v. Intromedix, Inc.*, 2004 WL 1497559, at *1 (S.D.N.Y. July 2, 2004) ("Merely because the legal theories asserted in the cases are different does not prevent joinder."); *Rodriguez*, 151 F.R.D. at 533 (finding "overlapping questions of fact" likely to arise where plaintiff was injured after hospital administered a drug that caused injury to plaintiff and plaintiff sought to join hospital to action against manufacturer of the drug); *Wilson v. Famatex GmbH Fabrik Fuer Textilausruestungsmaschinen*, 726 F. Supp. 950, 951 (S.D.N.Y. 1989) (joining physician who treated plaintiff to action against manufacturer of the machine that injured plaintiff because, *inter alia*, "[c]ommon questions of law and overlapping questions of fact will arise").

    B.    *Fundamental Fairness*

"Fulfillment of the requirements of Rule 20, however, is not alone enough" to warrant granting a motion to amend and remand pursuant to § 1447(e). *Id.* at 952. "Although it is within the sound discretion of the court to permit a proper party to be joined even if the citizenship of that party destroys diversity and requires a remand...careful consideration of the principles of fundamental fairness is especially important in such a case." *Id.* Fundamental fairness includes consideration of four factors: "(1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) plaintiff's motivation in moving to amend." *Da Cruz v. Towmasters of New Jersey, Inc.*, 217 F.R.D. 126, 134 (E.D.N.Y. 2003) (Glasser, J.) (finding district courts of the Second Circuit to be in agreement on these factors, despite the Circuit Court's silence on the issue); *see e.g.*, *In re Rezulin Prods. Liability Lit.*, 2002 WL 31466455, *1 (S.D.N.Y. Nov. 5, 2002) (applying same

four-factor test for fundamental fairness analysis); _Quizhpi v. Tjernlund Prods. Inc._, 2001 WL 504843, at *3 (S.D.N.Y. May 11, 2001) (same); _Mammano_, 941 F. Supp. at 325 (same); _Wilson_; 726 F. Supp. at 952-953 (same). "These factors should not be applied mechanically, however, for 'instead of adopting a bright-line rule [to determine whether joinder should be granted], it is wiser to permit the district court to balance the defendant's interest in a federal forum against the possibility that judicial resources will be wasted and inconsistent results obtained if joinder is denied.'" _Mammano_, 941 F. Supp. at 325 (citations omitted).

1.   *Delay*

Plaintiffs petitioned this Court for a remand on or about December 10, 2003, approximately 16 months after Defendants filed their Notice of Removal, 10 months after the deadline for amendment of the pleadings, and 9 months after the deadline for completion of joinder.[5]

"When evaluating the plaintiff's delay in seeking joinder of the non-diverse party, the courts have focused on the time between the date of removal and the date on which leave to amend was sought." _Young v. Simon Ladder Towers, Inc._, 1996 WL 685753, *2 n.5 (W.D.N.Y. Nov. 26, 1996); _see also_ _Da Cruz_, 217 F.R.D. at 134 ("Delay is measured from the time of removal."); _Quizhpi_, 2001 WL 504843, at *3 (same). Many courts also consider the time period between plaintiff's acquisition of the knowledge necessary to join the proposed defendant and plaintiff's motion to amend and/or the time period between the filing of the initial complaint and plaintiff's motion to amend. _Compare Quizhpi_, 2001 WL 504843, *3 (remanding where plaintiff filed motion within 30 days of removal); _Mammano_, 941 F. Supp. at 325 (granting motion to

---

[5] On January 8, 2003 this Court (Levy, M.J.) issued a Scheduling Order fixing deadlines for amendment of the pleadings (February 1, 2003) and completion of joinder (March 1, 2003).

remand where plaintiff moved to add additional defendants "shortly after" defendants filed their notice of removal); Young, 1996 WL 685753, at *2 (granting motion to remand because delay of four and a half months from the date of removal, "standing alone" insufficient to deny joinder); Wyant, 881 F. Supp. 923 (granting amendment and removal where plaintiffs brought motion within two weeks of discovering proposed defendant's alleged culpability); and Wilson, 726 F. Supp. at 952-953 (remanding where ten months elapsed between filing the original complaint and plaintiffs' seeking amendment because plaintiffs "had no reason to believe" proposed defendant liable for injuries until then) with Da Cruz, 217 F.R.D. at 134-135 (granting motion to remand but weighing the delay factor against joinder where plaintiffs waited 26 months and the information claimed by plaintiff to be new was "within his knowledge from the time of the accident"); Rezulin, 2002 WL 31466455, at *1 (denying motion to remand where plaintiff "offer[ed] no excuse" for her failure to satisfy state procedural requirements for malpractice claim and waited more than six months after removal to file motion to join); Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 148 F. Supp. 2d 321, 330 (S.D.N.Y. 2001) (denying motion to remand where, *inter alia*, "defendants have demonstrated that the plaintiffs have been on notice of facts sufficient to support the proposed claims against [proposed defendant] for approximately 18 months–and possibly prior to filling [the present] action"); and DiNardi v. Ethicon, Inc., 145 F.R.D. 294, 298 (N.D.N.Y. 1993) (denying motion to remand where plaintiff's explanation for delay "inadequate").

Plaintiffs attribute the 16-month delay between the date of removal and their motion to remand to three things: (1) "the mistaken impression that [Chauca Senior] was planning to amend his pleadings to bring [Defendants] into the state case and thereby allowing [*sic*] the parties to potentially discontinue the separate action pending against the defendants in this

matter;" (2) the fact that they were "awaiting discovery materials to determine if the products liability case against the manufacturer was meritorious and should indeed be pursued;" and (3) the change of attorneys during the proceedings. (Pls. Mem. of Law at 8.)

However, Plaintiffs cite to no evidence in support of their contention that they believed Chauca Senior would add Defendants to the state court action. Nor do they explain how their alleged late receipt of discovery material delayed their motion to remand.[6] The delay of any discovery materials Plaintiffs may have needed in order to determine the merits of the product liability claim would explain their delay in filing suit against Defendants, but would not explain their failure to add parties against whom actions commenced in state court two years prior. It is not clear how this unsubstantiated claim that Plaintiffs were waiting on discovery materials regarding Defendants affected whether and when they could add the Proposed Defendants.

In addition to not filing the present motion within the Court-imposed deadline for motions to amend or join,[7] Plaintiffs have not adequately alleged that their delay is a result of newly-discovered evidence or any other reasonable grounds. As a result, this factor weighs strongly against remand.

### 2. *Prejudice*

---

[6] The police report is dated August 15, 1999, the date of the accident. (Pls. Mem. of Law Ex. C.) The Letter from EFS on behalf of Allstate alleging tire failure as the cause of the accident is dated December 24, 1999. (Defs. Mem. of Law Ex. C.) The letter from an Allstate insurance adjustor to Plaintiffs' first attorney is dated May 24, 2000. (Letter from Paul Hayt to Magistrate Judge Levy, dated May 20, 2003, Ex. B.) Plaintiffs do not provide the Court with the dates of their receipt of these documents, assuming these documents are all or part of the discovery materials to which they refer.

[7] *See DiNardi*, 145 F.R.D. at 298 (taking into account defendant's adherence to Court's scheduling order and plaintiff's failure to bring timely motion to remand in denying motion).

Plaintiffs cite the absence of Proposed Defendant Garret in the federal action and the danger of inconsistent verdicts as grounds for prejudice should the instant motion be denied, Pls. Mem. of Law at 5-6, Transcript of Oral Arg. ("Tr.") at 12, while Defendants argue "[t]he disparate stages which the state court actions and the federal court action are in clearly mitigates against any remand to state court." (Defs. Mem. of Law at 13.)

The record, supplemented after Oral Argument with copies of discovery-related correspondence between the parties from September 2002 until February 2004, shows that Defendant has gone to considerable efforts and experienced undue difficulty obtaining discovery from Plaintiffs since October 2002. (*See generally* Defs. Futher Mem. in Opp'n; Pls. Further Affirmation in Support.) As such, the Court finds that this factor weighs in favor of maintaining this action in federal court, where "significant time and resources have already been devoted." *See Rezulin*, 2002 WL 31466455, at *1.

### 3. *Likelihood of Multiple Litigation*

Although Defendants argue that, if remanded, multiple litigation is possible because "there is no guarantee of a consolidation based on the disparate stages of the proceedings," (Defs. Mem. of Law at 14.), they cite no authority for this proposition. In contrast, this factor typically tips in favor of remand. *Mammano*, 941 F. Supp. at 325 (multiple litigation when action arises from single car accident a "waste of judicial resources"); *Rodriguez*, 151 F.R.D. at 533 ("multiple suits would constitute a clear waste of judicial resources, particularly as common questions of fact would necessitate utilizing the same witnesses and documents in both cases"); *Wyant*, 881 F. Supp. at 923 (litigating in two fora "an inefficient use of judicial resources"); *Wilson*, 726 F. Supp. at 952 (multiple lawsuits, extra expense, waste of judicial resources and possibility of conflicting outcomes if joinder not permitted); *but see DiNardi*, 145 F.R.D. at 298

(acknowledging likelihood of multiple trials and denying remand when other factors favored defendant and federal trial likely to last "only two to three days"). This factor favors Plaintiffs' position.[8]

    4.    *Plaintiff's Motivation*

"Generally a plaintiff may not act to divest the federal court of jurisdiction over a case that has been properly removed...Therefore, when joinder would necessitate remand, the court must determine whether the plaintiff seeking joinder is motivated primarily by a desire to remand to his forum of choice." Wilson, 726 F. Supp. at 952 (citation omitted). Although this prong can weigh in favor of the plaintiff when the plaintiff is seeking to add a party who is already part of an action with the same plaintiff in state court, See Quizhpi, 2001 WL 504843, at *3; Rodriguez, 151 F.R.D. at 533; Mammano, 941 F.Supp. at 325, Plaintiffs' eleventh-hour request to join parties whose identities and potential liability was known during the period of inordinate delay, coupled with an inexcusable and potentially bad faith delay in discovery, strongly suggests "a dilatory or other improper strategic motive" in seeking amendment. Aries Ventures, Ltd v. AXA Finance S.A., 696 F. Supp. 965, 969 (S.D.N.Y. 1988) (denying motion to amend under Rule 15 where plaintiffs advised that proposed defendants were culpable prior to commencement of the action and where court determined plaintiffs motivated by fear of losing

---

[8] Defendants also argue that the doctrine of judicial estoppel might prevent any subsequent trial. (Defs. Mem. of Law at 14.) The doctrine of judicial estoppel holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). This argument assumes that the state court actions will not be consolidated, a determination that is not before this Court. Additionally, to the extent that Plaintiffs may be precluded, after winning at trial, from any positions contrary to those stated in their initial complaint in state court, such preclusion would benefit Defendants and reduce the number of proceedings arising out of the accident.

imminent summary judgment motion to named defendants); *see also* *DiNardi*, 145 F.R.D. at 296 (*quoting* *Aries Ventures* and denying remand where plaintiff's "eleventh-hour request" to remand failed to justify two-year delay). Therefore, this factor weighs against Plaintiffs.

III.     *Conclusion*

The Court denies Plaintiff's motion to amend the complaint to add the Proposed Defendants. Though fulfilling the threshold requirements for joinder under Rule 20, Plaintiffs fail the Fundamental Fairness analysis. Plaintiffs failed to adequately justify their 16-month delay in moving to amend and remand. Additionally, though there are policy reasons against having Plaintiffs litigate in multiple fora, Defendant would face great prejudice in that it has been unable to properly conduct discovery for over two years, during which Plaintiffs appear to have engaged in bad faith delay. This delay strongly suggests an improper motive on the part of Plaintiffs in moving to amend at this stage in litigation. Therefore, Plaintiffs' motion to amend the complaint and remand to state court must be denied.

**SO ORDERED.**

S/
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:     April   26  , 2005
           Brooklyn, NY